IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FIDEL MUNOZ, | : | No. 4:03-CV-03-2293 |
| | : | |
| Plaintiff, | : | (Judge Jones) |
| | : | |
| v. | : | |
| | : | |
| ATTORNEY FOR THE UNITED STATES | : | |
| EXECUTIVE OFFICE, <u>ET AL.</u>, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM AND ORDER**

**August 4, 2006**

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

On November 14, 1997, Fidel Munoz (hereinafter "Plaintiff" or "Munoz") was found guilty of conspiracy with intent to distribute marijuana. In connection with this conviction, a number of personal belongings were seized from him pursuant to a valid search warrant. On March 23, 1998, Plaintiff requested the return of his property pursuant to Federal Rule of Criminal Procedure 41(e), which is now Rule 41(g) ("Rule 41(g) Motion"). This request went unanswered and prompted Plaintiff to file a second Rule 41(g) Motion on December 28, 1999. On February 2, 2000, Assistant United States Attorney ("AUSA") Houser responded to Plaintiff by objecting to the return of the property, asserting that it might be

needed for post-conviction processes. On February 14, 2000, Plaintiff responded to Houser's denial by requesting that the government provide him with an itemized list of his personal property which it held. On April 24, 2000, Plaintiff was notified by the Court that most of his property had been destroyed.[1]

On April 16, 2002, Plaintiff filed a tort claim against the agencies responsible for the storage of his property, which was subsequently denied on December 13, 20002 pursuant to 28 U.S.C. § 2401(b)[2] and 28 U.S.C. § 2680(a).[3] Plaintiff requested a reconsideration of that denial on April 8, 2003.  On June 20, 2003, Plaintiff's reconsideration request was denied with instructions that any appeal had to be filed within six months of that date.

On December 16, 2003, Plaintiff filed a complaint pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq. ("FTCA"), alleging that federal

---

[1] We note that old phone records were the only property not destroyed. (Rec. Doc. 1 at 3).

[2] "[A] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented." 28 U.S.C. § 2401(b) (2006).

[3] "Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a) (2006).

employees, while acting in the course and scope of their duties, negligently caused the destruction of his property seized pursuant to a valid search warrant.[4] To compensate for the loss of his property, Plaintiff seeks $15,000 in equitable damages. Plaintiff also avers that the destruction of his property constitutes a violation of his due process rights under the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution.

On June 15, 2006, Defendant filed a Motion to Dismiss the Plaintiff's complaint for lack of subject matter jurisdiction, ("the Motion") (doc. 37), pursuant to Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)"). Defendant's Motion, which has been briefed by the parties, is ripe for disposition.

## **STANDARD OF REVIEW:**

In considering a motion to dismiss, a court must accept the veracity of a plaintiff's allegations. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also White v. Napoleon, 897 F.2d 103, 106 (3d Cir. 1990). In Nami v. Fauver, 82 F.3d

---

[4] Insofar as Plaintiff's complaint can be read to allege claims against captioned Defendants in their individual capacities, these allegations illustrate Plaintiff's strategy of in effect "throwing everything at the wall to see what sticks." These allegations are rooted in Plaintiff's attempt to assert every cause of action that he thinks is remotely applicable to his situation in the hopes that he is successful on one of them. After a careful review of the complaint, it is clear to the Court that the actions prompting this legal battle were actions committed by government employees within the course and scope of their employment. Plaintiff's claims asserted against Defendants in their individual capacities are therefore dismissed, as Plaintiff cannot properly allege such claims against government employees in their individual capacities.

63, 65 (3d Cir. 1996), our Court of Appeals for the Third Circuit added that in considering a motion to dismiss based on a failure to state a claim argument, a court should "not inquire whether the plaintiffs will ultimately prevail, only whether they are entitled to offer evidence to support their claims." Furthermore, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also District Council 47 v. Bradley, 795 F.2d 310 (3d Cir. 1986).

**DISCUSSION:**

We initially note that Defendant brings the instant Motion two and a half years after the filing of Plaintiff's complaint. Although it would have been in the interest of judicial economy had the instant Motion been filed in a more timely manner, the Federal Rules of Civil Procedure permit a litigant to challenge subject matter jurisdiction at any point during litigation.[5] Therefore, it is notable that the imprudent delay is inconsequential to the ultimate disposition of the instant Motion.

The Motion presents an interesting issue for resolution; namely, the extent to which the FTCA waives the sovereign immunity of the federal government. The

---

[5] "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed. R. Civ. P. 12(h)(3) (2006).

FTCA waives federal sovereign immunity for monetary claims "for injury or loss of property . . . caused by the negligent or wrongful act of omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. §§ 2671 et seq. (2006). Although broad, this waiver is not plenary. Congress preserved sovereign immunity with regard to, among other things, "any claim arising in the respect of the . . . detention of any goods, merchandise, or other property by any officer of customs or excise or any law enforcement officer." 28 U.S.C. § 2680(c) (2006) ("§ 2680(c)"). The only exception to this retention of sovereign immunity arises in the context of asset forfeiture, 28 U.S.C. § 2680 (c)(1)-(4) (2006), which is a circumstance not presently at issue.

In regards to 28 U.S.C. § 2680(c), the issue of semantics is one that courts have historically been forced to resolve during the course of adjudication, and it is a task that this Court cannot escape. Defendant is correct in asserting that courts have broadly interpreted the phrase "arising in respect of . . . detention of any goods, merchandise, or other property" to include claims relating to the negligent handling, storage, loss, or destruction of detained property. See Kosak v. U.S., 465 U.S. 848, 854 (1983); Adeleke v. United States, 355 F.3d 144 (4th Cir. 2004); Cheney v. U.S., 972 F.2d 247, 248 (8th Cir. 1992); U.S. v. Chambers, 92 F. Supp. 2d 396, 401 (D.N.J. 2000); Haughton v. F.B.I., 1999 WL 1133346 *6 (S.D.N.Y. 1999). "Goods"

have been defined as "every species of personal property." U.S. v. Greer, 2002 WL 31643018 *2-3 (D. Kan. 2002) (quoting Black's Law Dictionary, 694 (6th ed. 1991)).

Although there have been judicial disagreements regarding the scope of the phrase "law enforcement officers," courts in the Third Circuit have construed this phrase to include federal officers who are not engaged in activities related to customs or excise.[6] Schreiber v. U.S., 1997 WL 563338 *7 (S.D.N.Y. 1997); Garnay, Inc. v. M/V Lindo Maersk, 816 F.Supp. 888, 897 (S.D.N.Y. 1993); Rufu v. U.S., 876 F.Supp. 400, 403-406 (E.D.N.Y. 1994). In Schreiber, the Southern District of New York explained that its extension of § 2680(c) to law enforcement officers not involved in customs or excise activities was based on the conclusion that such an interpretation of the statute was consistent with Congress' objectives in creating exceptions to the FTCA.[7] We agree with this conclusion and the

---

[6] In the phrase "any officer of customs or excise or any law enforcement officer," other courts have concluded that "any law enforcement officer" merely modifies "any officer of customs or excise" and thus, 28 U.S.C. §2680(c) merely preserve sovereign immunity for law enforcement officers acting in a customs or excise capacity. See Kurinsky v. U.S., 33 F.3d 594, 596-98 (6th Cir. 1994).

[7] In Kosak, the Supreme Court of the United States asserted that Congress had three main objectives in creating exceptions to the FTCA: i) ensuring that 'certain government activities' not be disrupted by threat of damages suits, ii) avoiding exposure of the United States to liability for excessive or fraudulent claims, and iii) not extending the coverage of the Act to suits for which adequate remedies were already available. 1997 WL 56338 at *6 (quoting 465 U.S. 848 at 858). Schreiber then announces that "the first two of these objectives strongly support construing § 2860(c) to include detentions by federal agents for reasons unrelated to customs or excise," as

corresponding extension of § 2680(c) to law enforcement officers not involved in customs or excise activities. The resolution of these semantic issues allows us to address the merits of the instant Motion.

### A.     Presentment of Claim Under the FTCA

The FTCA forecloses suits against the government "unless the tort claimant has previously presented to the appropriate administrative agency a claim that meets the specific statutory requirements as to its form, content, and timing." Haughton, 1999 WL 1133346 at *4 (quoting Millares v. U.S., 137 F.3d 715, 719 (2d Cir 1998)). The presentment requirement is set forth in 28 U.S.C. § 2401(b), which provides that a "tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues." "Ordinarily, a plaintiff's FTCA claim accrues at the time of injury" or when "the plaintiff has or with reasonable diligence should have discovered the critical facts of both his injury and its cause." Kronish v. U.S., 150 F.3d 112, 121 (2d Cir. 1998).  Courts have repeatedly upheld the dismissal of tort claims under Rule 12(b)(1) where the claims were not presented to the appropriate federal agency within the 2 year limitation period. See Millares, 137 F.3d at 719-720; See Keene

---

these two objectives would be most effectively achieved by equal application to both detentions related to customs and excise activities and detentions unrelated to those activities. 1997 WL 56338 at *6.

Corp. v. U.S., 700 F.2d 836, 841 (2d Cir. 1982).

Although Plaintiff's initial request for the return of his property was submitted on March 23, 1998, and his second Rule 41(e) Motion was filed on December 28, 1999, Plaintiff's claim did not accrue until April 24, 2000, as this was the date upon which Plaintiff was first advised that his property had been destroyed. There was no reason for Plaintiff to suspect that his property had been destroyed prior to this notification and thus, the filing of his claim with the requisite agencies on April 16, 2002 clearly puts the claim within the two year statutory period announced in 28 U.S.C. § 2401(b).

### B.     Merits of Plaintiff's FTCA Claims

Defendant has questioned this Court's subject matter jurisdiction over the instant issues and has cited cases in support of its assertion that this Court lacks the requisite jurisdiction to hear the Plaintiff's claims. In response, Plaintiff attempts to distinguish the cases relied upon by Defendant. When considering a Rule 12(b)(1) claim, "the plaintiff has the ultimate burden of proving the Court's jurisdiction by a preponderance of the evidence." Haughton, 1999 WL 1133346 at *1 (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

That being said, Plaintiff endeavors to factually distinguish five of the cases relied upon by Defendant. Plaintiff asserts that Schreiber is factually

distinguishable for two reasons. First, unlike the instant case, Schreiber had ostensibly waived any claim on damages to two particular vases and then reneged on this waiver when he discovered that additional property had also sustained damage. (Rec Doc. 40 at 2). Second, Plaintiff asserts that the damages to Schreiber's property occurred *after* the government transferred the property to an independent contractor, thusly placing it within the rule that the government is not liable for damages inflicted by independent contractors. Id. While creatively identified, these factual distinctions are not sufficient to persuade the Court that Schreiber is distinguishable from the instant case, as we will detail below.

As Defendant notes, "the Court did not . . . rely in any way on Schreiber's waiver of claim for damages or on the fact that the property at issue was in the possession of an independent contractor in reaching its conclusions." (Rec. Doc. 41 at 2). Schreiber's claims were not denied because he had signed a waiver releasing the government from liability,[8] nor were they denied because the property was ostensibly damaged after it was entrusted to an independent contractor.[9] Rather, the

---

[8] The issue of waiver was not even raised by Schreiber as a defense, and it was only mentioned in the opinion by the Court once, in the recapitulation of the factual background. The issue of waiver made no appearance in the Court's reasoning, and can thus be considered inconsequential to that reasoning.

[9] Although, in U.S. v. Orleans, 425 U.S. 807, 813-14 (1976), the Supreme Court notes that 28 U.S.C. § 2871 excepts the government for the actions of independent contractors with regard to FTCA claims, the existence of an independent contractor in Schreiber was not raised as a defense by the Plaintiff. It was mentioned by the Court exclusively in the first footnote of the

claims were barred because the "Supreme Court's interpretation of § 2680(c) excludes not only claims for compensation for injury to detained property, but also claims for loss of detained property." Schreiber, 1997 WL 56338 at *4.

Next, Plaintiff attacks Defendant's reliance on Adeleke by claiming that such reliance is misplaced because the property at issue in that case was destroyed by a third party and because Adeleke was requesting return of his property past the one-year time frame in which to do so pursuant to a baggage notice.[10] However, it was the U.S. District Court for the Eastern District of New York that denied Adeleke's Rule 41(g) motion (which was construed as an action in equity since no criminal case was pending against him) on the grounds that a third party was in possession of

---

opinion. Like the issue of waiver, this issue was inconsequential to the Court's reasoning. For if it had been of any import, the Court could have simply denied the Plaintiff's claims based on the aforementioned precedent announced in Orleans. But it did not do so. Instead of relying on this Supreme Court precedent, the Court felt it necessary to delve into the meaning of the phrases "arising out of the detention of goods" and "law-enforcement officers." Schreiber, 1997 WL 56338 at *2-7. The centrality of this analysis to the Court's decision indicates that the Court felt that the existence of the independent contractor was inapposite to the ultimate resolution of Schreiber.

[10] Adeleke traveled from Nigeria to John F. Kennedy International Airport, where he was arrested by U.S. Customs officials when a baggage inspection revealed approximately two kilograms of heroin concealed in Adeleke's briefcase. Incident to Adeleke's arrest, customs officials seized money as well as several of Adeleke's valuable personal effects. The seized property was stored at the U.S. Customshouse, located at 6 World Trade Center in Manhattan. U.S. customs sent Adeleke a standard "Baggage Release Notice" advising him of three options to retrieve his personal property. The Notice provided that baggage not retrieved within one year of seizure would be considered abandoned and sold at public auction or destroyed. He followed none of these procedures and thus, when terrorists attacked lower Manhattan on September 11, 2001, Adeleke's unclaimed personal property was destroyed.

his property at the time it was destroyed. On appeal, the Fourth Circuit did not afford any weight to the fact that Adeleke's property was not destroyed by a foreseeable governmental act or to the fact that Adeleke sought the award of money damages after the one-year period for reclaiming his property had expired; rather, the Fourth Circuit emphasized a "more fundamental obstacle to Adeleke's effort to seek compensation . . . the sovereign immunity of the United States." <u>Adeleke</u>, 355 F.3d at 149. Accordingly, the Fourth Circuit determined that the situation in <u>Adeleke</u> qualified as one "arising in respect of" detention. <u>Adeleke</u> is therefore persuasive precedent for defining that phrase, and Defendant uses this phrase precisely in that capacity. Thus, any attempt made by Plaintiff to distinguish <u>Adeleke</u> for the purposes of this case is ineffective and unpersuasive.

Plaintiff's attack on <u>Greer</u> also suffers from infirmities. He claims that, unlike in the instant case, Greer's property was legally detained, he had not exhausted administrative remedies prior to filing suit, and he could not develop an argument of purposeful destruction of that property. (Rec. Doc. 40 at 4). However, <u>Greer</u> clearly states that § 2680 is applicable even if "prison officials detained [Plaintiff's] property . . . unlawfully." <u>Greer</u>, 2002 WL 31643018 at 2. Therefore, if the provisions of § 2680 were satisfied, it would insulate the United States Government from suit regardless of whether Plaintiff's personal effects were being detained

legally or illegally. Furthermore, as Defendant notes, Greer contained no discussion about the exhaustion of administrative remedies or purposeful destruction in the Court's analysis of the lost property claims.[11] For these reasons, Plaintiff's attempt to distinguish Greer from the instant case is unsuccessful.

Fourthly, Plaintiff aims to factually distinguish Haughton in a number of ways. Munoz alludes to the fact that the "property" in Haughton consisted of unsigned bonds, making them valueless. However, Haughton notes that the "claims are barred by the FTCA's exception for claims arising out of the detention of goods by law enforcement agents." Haughton, 1999 WL 1133346 at *5. One can safely assume from this statement that the "valueless" nature of the bonds had no bearing on the Court's decision, as the Court must have concluded that the bonds still qualified as "goods" for FTCA purposes.

Additionally, Munoz claims that, unlike in the instant case, the plaintiff in Haughton failed to seek appropriate administrative remedies within the applicable statutory period. He quotes footnote two to support this averment: "Even if the exemption of § 2680 were read to be inapplicable to this case, plaintiff's . . . claims must be dismissed for failure to present them first to the FBI." Haughton, 1999 WL

---

[11] There was a discussion of exhaustion in regard to Greer's emotional distress claim, but that is not relevant to the issues in question.

1133346 at *6. In stating this, it is clear that the Southern District of New York saw the statute of limitations as alternative grounds to dismiss the plaintiff's claims, had § 2680 been inapplicable to plaintiff's situation. However, the Court believed that § 2680 was clearly applicable to Haughton's situation: "§ 2680 bars plaintiff's claims . . . for the allegedly lost property seized from plaintiff by the . . . .police and later detained by the FBI." Id. Thus, Munoz's attempt to distinguish the instant case from Haughton on the grounds that § 2680 was not the dispositive element in Haughton must be rejected.

    Kosak is the last case which Plaintiff attempts to distinguish from the instant case. In a section of Plaintiff's brief entitled "Memorandum of Law," Plaintiff attempts to do this by claiming that, unlike Kosak's property, his "property was absolutely fine while being detained. The damages did not occur . . . until [the property] was released from detention and a Form for Destruction was filed." (Rec. Doc. 40 at 7). In averring this, Plaintiff attempts to establish that § 2680 is inapplicable to his claims because his property was not "detained" when the injury to it was sustained. However, Defendant notes, "there is no allegation in the complaint nor any evidence that Munoz's property was 'released' as he claims- rather, his property was seized, detained, then destroyed." (Rec Doc. 41 at 6). We find that even if Plaintiff's allegation was true, it would not save Munoz from the

13

reach of § 2680. Kosak stands for the proposition that "§ 2680(c) . . . bar[s] claims based on the destruction of property in Government custody, [as well as] claims brought when the goods were . . . detained." Haughton, 1999 WL 1133346 at *6. Since Munoz's property was still in government possession when it was destroyed, it falls under the guise of § 2680, regardless of whether the property was or was not "detained" at the time of its destruction. Thus, Plaintiff's attempt to distinguish Kosak is likewise unsuccessful.

For the aforementioned reasons, Plaintiff has failed to distinguish the instant case from the persuasive cases that the Government relies upon to establish the its sovereign immunity in this matter. Consequently, we conclude that the Government retains its sovereign immunity with regard to Plaintiff's FTCA claims.

### C. Plaintiff's Equitable Claim

Plaintiff's complaint request of $15,000 in compensation for the damage to his property can be construed as either a claim for compensatory damages under the FTCA or as a claim pursuant to Federal Rule of Criminal Procedure 41. In either case, Plaintiff's claim must be barred. In U.S. v. Bein, 214 F.3d 408 (3d Cir. 2000), the Third Circuit Court of Appeals asserted that while the FTCA waives sovereign immunity and provides jurisdiction in district courts for claims for money damages resulting from injury to, or loss of, property caused by the negligence of a

government employee, 214 F.3d at 415 (citing 28 U.S.C. § 1346(b)(1)), the waiver in citing 28 U.S.C. § 1346(b)(1) does not extend to any claim "arising in respect . . . of the detention of goods or merchandise by any officer of customs or excise or any other law-enforcement officer." 28 U.S.C. § 2680(c). Accordingly, the Government's retention of its sovereign immunity bars such a claim under the FTCA.

Even if Plaintiff's claim was construed as a Rule 41 motion, it would nonetheless be barred by sovereign immunity. In Lane v. Pena, 518 U.S. 187 (1996), the Supreme Court of the United States addressed the effect of sovereign immunity on the axiom that every legal right presumes a remedy, explaining that "when it comes to an award of money damages, sovereign immunity places the Federal Government on an entirely different footing than private parties." 518 U.S. 187 at 196. Where the federal government is itself sued, the available remedies are not those that are appropriate, but only those for which sovereign immunity has been expressly waived. Id. at 197 (internal citations omitted). "This may leave some aggrieved parties without relief, but that is inherent in the doctrine of sovereign immunity." Adeleke, 355 F.3d at 150-51.

Many courts have concluded that Rule 41(g) "simply provides for the return of seized property, [and] does not waive the sovereign immunity of the United

15

States with respect to actions for money damages relating to such property," even when, for whatever reason, the property cannot be returned. Id. at 151. See Okoro v. Callaghan, 324 F.3d 488, 491 (7th Cir. 2003); United States v. Hall, 269 F.3d 940, 943 (8th Cir. 2001); United States v. Potes Ramirez, 260 F.3d 1310, 1315-16 (11th Cir. 2001); United States v. Jones, 225 F.3d 468, 470 (4th Cir. 2000); U.S. v. Bein, 214 F.3d at 415; Pena v. United States, 157 F.3d 984, 986 (5th Cir. 1998). We choose to adopt this persuasive authority and thus, Petitioner's claim for equitable relief must be denied since the United States has not expressly waived its sovereign immunity with regard to money damages relating to seized property.

  **D.**  **Plaintiff's Constitutional Claims**

Plaintiff brings forth due process claims under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. As directed against the United States, these claims must be dismissed for the following reason. In Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, the Supreme Court of the United States recognized that claims against federal agents for constitutional violations may be implied directly under the Constitution where no statute specifically created such a remedy. See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 397 (1971).

> However, such an action can be brought only against federal agents in their individual capacities. Therefore, to the extent the [Constitutional]

> Causes of Actions can be fairly read to state a Bivens claim against the United States and the individual defendants in their official capacities, such claims are barred by sovereign immunity and must be dismissed.

Hightower v. United States, 205 F. Supp. 2d 146, 155. "Indeed, such constitutional claims against the United States are 'routinely dismissed for lack of subject matter jurisdiction.'" 205 F. Supp. 2d 146 at 155 (quoting Keene Corp. v. United States, 700 F.2d 836, 845 n.13 (2d Cir. 1983)). Following rationale, Plaintiff's constitutional claims against the United States are barred by sovereign immunity and must be dismissed for lack of subject matter jurisdiction.

For all of the above reasons, the Court lacks subject matter jurisdiction over Plaintiff's claims. Therefore, Defendant's Motion must be granted with regard to all claims.[12]

---

[12] Thus, Plaintiff's Motion in Limine (doc. 31) is denied as moot.

**NOW, THEREFORE, IT IS ORDERED THAT**:

1. Defendant's Motion to Dismiss (doc. 37) is GRANTED.

2. Plaintiff's Motion in Limine (doc. 31) is DENIED.

3. The Clerk is directed to close the file on this case.

s/ John E. Jones III
John E. Jones III
United States District Judge
